## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIMINAL NO. 3:13-35 |
| v. | ) | |
| | ) | JUDGE KIM R. GIBSON |
| RUKIYA R. SMITH, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

### I.      Synopsis

Before the Court is Defendant's request, following her plea of guilty, to remain on bond pending sentencing in this matter. The Government opposes this request and asks that Defendant be detained pursuant to 18 U.S.C. § 3143(a)(2). Defendant does not contest that § 3143(a)(2) is applicable to this case and provides for mandatory detention based upon the offenses to which Defendant pled guilty. However, Defendant contends that exceptional reasons exist pursuant to 18 U.S.C. § 3145(c) to permit her release pending sentencing. For the reasons stated below, the Court will deny Defendant's request to remain on bond and order that Defendant be detained.

### II.     Background

On October 8, 2013, a two-count Indictment was issued against Defendant, charging her with distribution of less than 28 grams of cocaine base and less than 100 grams of heroin at Count 1 and possession with intent to distribute less than 100 grams of heroin at Count 2. (ECF No. 1). On October 15, 2013, Defendant appeared before

Magistrate Judge Pesto for her initial appearance and arraignment, at which time Defendant entered a plea of not guilty. (*See* ECF Nos. 9, 10).

The Government initially requested detention (*see* ECF No. 3) and Defendant was detained following her arraignment pending a detention hearing (*see* ECF No. 12). However, the detention hearing was cancelled, and Magistrate Judge Pesto granted Defendant's motion for release, which the Government did not oppose. (ECF No. 18). Defendant was released from custody after posting a $5,000 unsecured bond and was placed under the supervision of pretrial services, which included home detention and electronic monitoring. (ECF No. 19, 20).

On June 30, 2014, appearing before this Court, Defendant pled guilty to both Counts of the Indictment. (*See* ECF Nos. 44, 45). At the conclusion of Defendant's change of plea hearing, the Government asked that Defendant be detained pursuant to 18 U.S.C. § 3143(a)(2). (ECF No. 47 at 3:7-10). In response, Defendant asked the Court "to find not only exceptional reasons to keep [Defendant] out on bond, but possibly in the alternative defer decision on bond until the date of the sentencing hearing." (ECF No. 47 at 3:22-25). At the request of the Government (ECF No. 47 at 10:15-18), the Court agreed to briefly defer its ruling, pending a subsequent detention hearing, and permitted Defendant to temporarily remain on bond, subject to the previously ordered conditions.

This Court then held a detention hearing on July 10, 2014. After hearing testimony and the arguments of counsel, the Court took the matter under advisement to fully review the relevant statutory authority and case law and to issue a written decision. Defendant

was permitted to remain under the conditions of her current bond pending the Court's decision. Sentencing in this case is scheduled for December 11, 2014.

## III.    Analysis

Defendant requests that this Court allow her to remain on bond pending the disposition of sentencing. Defendant contends that there is clear and convincing evidence that she is neither a danger to the community nor a flight risk and that there are exceptional reasons to support her request to remain on bond rather than be detained. Specifically, Defendant asserts that she has been compliant with all of the requirements of her pretrial bond, she is the single mother of two children, she works two stable jobs to provide income for her family, and she has taken significant steps in changing her life and becoming a productive member of the community. Defendant's request raises an important issue related to the applicable statute—an issue on which courts are in disagreement. Namely, whether 18 U.S.C. § 3145(c) grants discretionary authority to a district court to make a finding of exceptional reasons and thereby release a defendant on bond despite the mandatory detention requirement of § 3143(a)(2).

### A.    Mandatory Detention Under § 3143(a)(2)

"The release or detention of a criminal defendant pending [her] sentence is governed by 18 U.S.C. § 3143(a)." *United States v. Lieberman*, 496 F. Supp. 2d 584, 586 (E.D. Pa. 2007); *see also* Fed. R. Crim. P. 46(c). On June 30, 2014, Defendant pled guilty to a two-count Indictment, which charged her at Count 1 with distribution of less than 28 grams of cocaine base and less than 100 grams of heroin, and at Count 2 with possession with

intent to distribute less than 100 grams of heroin, both in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).

Pursuant to 18 U.S.C. § 3143(a)(1),[1] Defendant may be released pending sentencing—unless subsection (a)(2) applies—only if the Court finds by clear and convincing evidence that Defendant is not likely to flee or pose a danger to the safety of any other person or the community if released. Courts have explained that § 3143(a)(1) "creates a presumption in favor of detention pending sentencing," which a defendant can rebut only if she meets her high burden of proving by clear and convincing evidence that she is not a flight risk or a danger to the community. *United States v. Georgiou*, No. 09-cr-88, 2010 WL 701892, at *1-2 (E.D. Pa. Mar. 1, 2010); *see also United States v. Strong*, 775 F.2d 504, 505 (3d Cir. 1985).

Here, Defendant has met her burden of showing by clear and convincing evidence that she is not a flight risk nor a danger to the community. Importantly, Defendant has significant ties to the community; she is a single mother of two teen children, who both live with her in Johnstown; she works two jobs, and her employers both testified that she is a reliable and valued employee; she recently earned her GED; and she has been compliant with all of her pretrial release conditions and was highly commended by her

---

[1] 18 U.S.C. § 3143(a)(1) provides:

Except as provided in paragraph (2), the judicial officer shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence, other than a person for whom the applicable guideline promulgated pursuant to 28 U.S.C. 994 does not recommend a term of imprisonment, be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c). If the judicial officer makes such a finding, such judicial officer shall order the release of the person in accordance with section 3142(b) or (c).

supervising officer. These facts, in addition to other testimony and evidence presented to

the Court,[2] are sufficient to show that Defendant is not likely to flee. Likewise, Defendant

has presented clear and convincing evidence to convince this Court that she does not pose

a danger to any person or to the community, despite the fact that the crimes to which

Defendant pled guilty involve distribution of a controlled substance and despite

Defendant's prior criminal record. Thus, Defendant has met the threshold requirements

of § 3143(a)(1).

However, because Defendant pled guilty to an offense described in 18 U.S.C.

§ 3142(f)(1)(C),[3] she is subject to the detention provisions set forth in § 3143(a)(2). Section

3143(a)(2)[4] requires detention of a person who has been found guilty of a prohibited

offense under the Controlled Substance Act, and which carries a maximum term of

---

[2] "In assessing the risk of flight, courts consider the following factors: (1) the nature and circumstances of the offense; (2) the defendant's family ties; (3) the defendant's employment status; (4) the defendant's financial resources; (5) the defendant's character and mental condition; (6) the length of defendant's residence in the community; (7) any prior criminal record; and (8) any flight or failures to appear in court proceedings prior to or during the time of trial." *United States v. Georgiou*, No. 09-cr-88, 2010 WL 701892, at *2 (E.D. Pa. Mar. 1, 2010) (citing *United States v. Giampa*, 904 F. Supp. 235, 358 (D.N.J. 1995)).

[3] 18 U.S.C. § 3142(f)(1)(C) includes "a case that involves . . . an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.) . . . ." Both of the Counts to which Defendant pled guilty carry a maximum term of imprisonment of twenty years, pursuant to 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).

[4] 18 U.S.C. § 3143(a)(2) provides:
   The judicial officer shall order that a person who has been found guilty of an offense in a case described in subparagraph (A), (B), or (C) of subsection (f)(1) of section 3142 and is awaiting imposition or execution of sentence be detained unless--
      (A)(i) the judicial officer finds there is a substantial likelihood that a motion for acquittal or new trial will be granted; or
         (ii) an attorney for the Government has recommended that no sentence of imprisonment be imposed on the person; and
      (B) the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community.

imprisonment of ten years or more, unless two requirements are both met: (1) first, that "there is a substantial likelihood that a motion for acquittal or new trial will be granted" or the Government recommends "that no sentence of imprisonment be imposed," ***and*** (2) second, that "the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community."

Here, Defendant entered a knowing and voluntary plea of guilty to a two-count Indictment charging her with distribution of a controlled substance—a plea that this Court found was supported by an independent basis in fact. Each of the two Counts to which Defendant pled guilty carries a maximum penalty of twenty years imprisonment. Thus, there is not a substantial likelihood that a motion for acquittal or new trial will be granted. Likewise, the Government has stated that it will not recommend that no sentence of imprisonment be imposed. Accordingly, although Defendant has presented clear and convincing evidence that she is unlikely to flee or pose a danger to the community if released, Defendant has failed to meet the additional conditions of § 3143(a)(2). Thus, § 3143(a)(2) requires that Defendant be detained pending sentencing.

Consequently, the only possibility for release pending sentencing in this matter arises under 18 U.S.C. § 3145(c), which permits release upon a finding of exceptional reasons. Defendant presented a number of reasons that she argues are "exceptional," and which would allow this Court to bypass the mandatory detention requirement of § 3143(a)(2). However, before evaluating Defendant's proffered reasons, the Court must first determine whether it has the discretionary authority to apply § 3145(c).

**B.     Application of § 3145(c) by a District Court**

Despite the mandatory language of § 3143(a)(2) requiring detention pending sentencing, numerous district courts have applied § 3145(c) to consider whether exceptional reasons warrant a defendant's release pending sentencing.  In relevant part, § 3145(c) provides:

> A person subject to detention pursuant to section 3143(a)(2) or (b)(2), and who meets the conditions of release set forth in section 3143(a)(1) or (b)(1), may be ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate.

This statutory provision has decidedly split courts as to whether a district court has the discretionary authority to consider if exceptional reasons exist to release a defendant pending sentencing.  The Third Circuit has not addressed the issue,[5] and the district courts within the Third Circuit have reached conflicting conclusions.  *Compare, e.g., United States v. Williams*, 903 F. Supp. 2d 292 (M.D. Pa. 2012) (finding that a district court has the authority to apply § 3145(c)), *with United States v. Salome*, 870 F. Supp. 648 (W.D. Pa. 1994) (finding that a district court does not have the authority to apply § 3145(c)), *and United States v. Nesser*, 937 F. Supp. 507 (W.D. Pa. 1996) (same), *and with United States v. Lieberman*, 496 F. Supp. 2d 584 (E.D. Pa. 2007) (assuming without deciding that a district court has the authority to apply § 3145(c)).

---

[5] While the Third Circuit has not specifically addressed this issue, it is noteworthy that, in a very early case following the 1990 amendment of the statute at issue here, the Third Circuit, in a decision without a published opinion, affirmed a district court memorandum and order applying the exceptional reasons analysis under § 3145(c).  *See United States v. Stein*, No. 90-cr-0425-01, 1991 WL 97635 (E.D. Pa. May 31, 1991) *aff'd*, 947 F.2d 938 (3d Cir. 1991).

At the outset, this Court notes that the cases in the Western District clearly embrace the view that a district court does not have the discretionary authority to apply § 3145(c). *See Salome*, 870 F. Supp. 648, *and Nesser*, 937 F. Supp. 507. Nevertheless, because other district courts within the Third Circuit have reached a contrary conclusion and because several circuit courts have addressed the issue in recent years and decided that district courts do have such authority, this Court will reexamine the Western District's approach to this question. And, as will be explained in detail below, the Court finds that the minority view, which the courts in this District have held, should be rejected and that we should instead align ourselves with the numerous district and circuit courts that now hold the majority view.

The question of whether a district court has discretionary authority to apply § 3145(c) is ultimately a matter of statutory interpretation. "It is well settled that the first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *United States v. Cooper*, 396 F.3d 308, 310 (3d Cir. 2005) (internal quotations and citations omitted). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Marshak v. Treadwell*, 240 F.3d 184, 192 (3d Cir. 2001) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997). "Where the language of the statute is clear . . . the text of the statute is the end of the matter." *Steele v. Blackman*, 236 F.3d 130, 133 (3d Cir. 2001). But, if the language of the statute is not clear, the court should attempt

to discern Congress's intent by using the ordinary tools of statutory construction. *Cooper*, 396 F.3d at 310 (citing *Ki Se Lee v. Ashcroft*, 368 F.3d 218, 222 (3d Cir. 2004)).

Several courts have noted that § 3145(c) is poorly worded. *See, e.g.*, *United States v. Thomas*, No. 10-cr-229 NLH, 2010 WL 3323805, at *1 (D.N.J. Aug. 20, 2010) ("[T]his Court is perplexed as to why Congress would choose to enact such a provision in such an unclear and indirect manner."); *United States v. Carr*, 947 F.2d 1239, 1240 (5th Cir. 1991) (noting, "Section 3145(c) is confusing . . ."). Nevertheless, while this Court agrees that Congress could have phrased the statute in a more clear and direct manner, the plain meaning of the statute is unambiguous. Because numerous courts have provided extensive—albeit inconsistent—analysis on the relevant statute, this Court will evaluate the meaning of the statute by contrasting the majority view with the minority view.

### 1. Majority View

Under the majority view, it is now well established that "§ 3145(c) unambiguously authorizes district judges, as 'judicial officers,' to release convicted individuals pending sentencing or appeal for 'exceptional reasons.'" *United States v. Williams*, 903 F. Supp. 2d 292, 298 (M.D. Pa. 2012).[6] This Court agrees with the majority view for four principal reasons, which will be examined in detail below: (1) the plain meaning of the statute; (2) the legislative history; (3) the weight of appellate and district court authority; and (4) certain pragmatic considerations.

---

[6] Judge Conner's opinion in *Williams*, 903 F. Supp. 2d 292, comprehensively discusses this issue and evaluates the leading cases holding both the majority view and the minority view. This Court adopts the reasoning and analysis of Judge Conner's excellent opinion to the extent that *Williams* addresses and amplifies the legal conclusions set forth in this Memorandum.

As a beginning point, the Court must interpret the plain language of the statute.

18 U.S.C. § 3145(c) provides, in full:

> **Appeal from a release or detention order.** An appeal from a release or detention order, or from a decision denying revocation or amendment of such an order, is governed by the provisions of section 1291 of title 28 and section 3731 of this title. The appeal shall be determined promptly. A person subject to detention pursuant to section 3143(a)(2) or (b)(2), and who meets the conditions of release set forth in section 3143(a)(1) or (b)(1), may be ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate.

It is the last sentence that contains the relevant language providing a district court with the discretionary authority to find exceptional reasons. Indeed, the last sentence of this subsection "explicitly provides that a 'judicial officer' may release a person subject to detention pending sentencing" upon a finding of exceptional reasons, as long as the other requirements of the statute are met. *Williams*, 903 F. Supp. 2d at 294.

The plain language of this sentence dictates that a district court may apply § 3145(c) for two reasons. First, § 3145(c) relates back to § 3143(a). The phrase in § 3145(c), "[a] person subject to detention pursuant to section 3143(a)(2) or (b)(2), and who meets the conditions of release set forth in section 3143(a)(1) or (b)(1)," requires that these two statutory provisions be read together. No court disputes that § 3143 applies to district courts. Thus, a district court deciding in the first instance whether "[a] person [is] subject to detention pursuant to section 3143(a)(2)" may also consider if exceptional reasons exist pursuant to § 3145(c) to release a defendant pending sentencing.

Second, and more importantly, the statute directs that "the judicial officer" shall order a defendant released upon a showing of exceptional reasons. Thus, critical to the

meaning of this provision is the definition of "judicial officer."  The Bail Reform Act defines "judicial officer" as "unless otherwise indicated, any person or court authorized pursuant to section 3041 of this title, or the Federal Rules of Criminal Procedure, to detain or release a person before trial or sentencing or pending appeal in a court of the United States."  18 U.S.C. § 3156.  As other courts have noted, "[t]his definition unquestionably encompasses district judges."  *United States v. Goforth*, 546 F.3d 712, 715 (4th Cir. 2008) (holding that "district judges unambiguously qualify as 'judicial officers' under § 3145(c)").  There is no language in the statute to "otherwise indicate" that judicial officers applying § 3145(c) do not include district court judges.  *See id.* (noting, as an example, that Congress altered the definition of "judicial officer" in § 3141(b) by vesting authority to only "a judicial officer of a court of original jurisdiction over an offense, or a judicial officer of a Federal appellate court," but that such a limitation is absent in § 3145(c)).  Differently stated, the statute does not limit the definition of "judicial officers" to the courts of appeals.

Furthermore, the term "judicial officer" is used consistently throughout § 3143 and § 3145.  It is uniformly accepted that "judicial officer," as used in § 3143(a) and § 3145(a) and (b), applies to district courts.  And there is simply nothing in the statute that alters the meaning of that term between subsections (b) and (c) of § 3145.

Despite the placement of the exceptional reasons language in a subsection entitled "appeal from a release or detention order," the inclusion of the term "judicial officer"—a clearly defined statutory term that applies to district judges—demonstrates Congress's intent to grant discretionary authority to district judges in the first instance to apply the

exceptional reasons analysis. *See United States v. Carr*, 947 F.2d 1239, 1240 (5th Cir. 1991); *Goforth*, 546 F.3d at 714-15; *Williams*, 903 F. Supp. 2d at 295.

Second, even if the language of the statute is ambiguous and subject to an alternate interpretation, the legislative history supports the majority view. Several courts have surveyed the legislative history of the language at issue—which was added as an amendment to the existing § 3145(c) as part of the Mandatory Detention Act of 1990. *See, e.g.*, *Goforth*, 546 F.3d at 713-14; *United States v. Green*, 250 F. Supp. 2d 1145, 1147-48 (E.D. Mo. 2003); *Williams*, 903 F. Supp. 2d at 300. This Court need not re-summarize the legislative history. As the cases cited above explain, while the plain meaning of the statute is unambiguous, the legislative history is nevertheless instructive and supports the majority view adopted here.

Third, in the two decades since the "exceptional reasons" language was added to § 3145(c), a "lopsided" majority of courts have concluded that the statute confers discretionary authority on a district court to apply § 3145(c). *Williams*, 903 F. Supp. 2d at 295 (collecting cases). Indeed, the majority view has been adopted or affirmed by nearly every circuit court of appeals. *See United States v. Weiner*, 972 F.2d 337 (table) (1st Cir. 1992) (unpublished opinion); *United States v. DiSomma*, 951 F.2d 494, 496 (2d Cir. 1991); *United States v. Goforth*, 546 F.3d 712, 715 (4th Cir. 2008); *United States v. Carr*, 947 F.2d 1239, 1240 (5th Cir. 1991); *United States v. Cook*, 42 F. App'x 803, 804 (6th Cir. 2002); *United States v. Herrera-Soto*, 961 F.2d 645, 647 (7th Cir. 1992); *United States v. Mostrom*, 11 F.3d 93, 95 (8th Cir. 1993); *United States v. Garcia*, 340 F.3d 1013, 1014, n.1 (9th Cir. 2003); *United*

*States v. Jones*, 979 F.2d 804, 806 (10th Cir. 1992); *United States v. Meister*, 744 F.3d 1236, 1239 (11th Cir. 2013).[7]

Thus, "[i]n view of the overwhelming weight of this appellate authority, the great majority of district courts to have considered this issue have concluded § 3145(c) affords district courts discretion in releasing defendants subject to detention under section 3143(a)(2)." *United States v. Burnett*, 76 F. Supp. 2d 846, 849 (E.D. Tenn. 1999) (collecting cases) (noting that despite the "logical and persuasive" analysis of *Salome* and *Nesser*, the "great weight of authority has reached a contrary conclusion"); *see also United States v. Cantrell*, 888 F. Supp. 1055, 1057 (D. Nev. 1995) ("Although the court finds quite persuasive the *Salome* court's rejection of district court jurisdiction to apply § 3145(c), the weight of authority . . . compels the court to conclude otherwise.").

Finally, as a practical matter,[8] the majority approach "is the most logical." *Goforth*, 546 F.3d at 716. Matters related to the detention of a criminal defendant prior to

---

[7] Arguably, a recent unpublished memorandum by the D.C. Circuit Court of Appeals, *United States v. Hite*, 540 F. App'x 2 (D.C. Cir. 2013) (unpublished opinion), places that circuit within the ranks of the courts that approve a district court's discretionary authority to find exceptional reasons under § 3145(c).

[8] This Court has previously addressed competing statutory interpretations by applying a pragmatic approach. *See United States v. Myrieckes*, No. 3:00-cr-14, 2009 WL 113263, at *3 (W.D. Pa. Jan. 15, 2009) ("Regardless of these competing possible interpretations of the statutory language, this Court chooses to resolve the semantical quandary through a pragmatic adjunct. The Court therefore considers the plain language to the extent useful, while focusing upon the problem the statute was intended to address."). In the case *sub judice*, even though this Court finds the language of the statute unambiguous, there remains a clear split of authority on the issue, particularly among courts in the Third Circuit. Thus, the Court bolsters and amplifies its interpretation of the statute with additional, pragmatic considerations.

sentencing involve a fact-intensive inquiry, an analysis for which the district court is much better suited than a reviewing court.[9]  As the Fourth Circuit has explained,

> Exceptions to detention are inherently fact-intensive determinations which district judges are well-positioned to make at the time detention is considered.  It would be surprising for Congress to create an exception to mandatory detention predicated on exceptional reasons, only to force a defendant to seek a ruling from the circuit court that such circumstances exist.

*Goforth*, 546 F.3d at 716.  Likewise, when addressing this same issue, the Fifth Circuit noted, "The Supreme Court has implicitly recognized that a district court is better situated than [the circuit courts] or the Supreme Court to find the facts necessary to making a bail determination."  *United States v. Snyder*, 946 F.2d 1125, 1127 (5th Cir. 1991) (citing *Mathis v. United States*, 389 U.S. 801 (1967)).  *See also*, *United States v. Price*, 618 F. Supp. 2d 473, 482 (W.D. N.C. 2008) (collecting cases).

Similarly, several courts have noted that the majority rule is proper in light of the significant problem of mootness that may arise in these cases.  *See, e.g.*, *Goforth*, 546 F.3d at 716; *Williams*, 903 F. Supp. 2d at 301 (explaining that if district courts could not conduct the § 3145(c) analysis, most defendants "would be detained and the efficacy of § 3145(c)

---

[9] One court espousing the minority view has suggested that Congress "wanted to provide an escape clause, but only to a reviewing court based on a 'cold' record," hypothesizing that "Congress might reasonably have worried that district courts, facing a defendant and his family in the courtroom, would stretch the 'exceptional reasons' language to release defendants worthy of sympathy, but in no way exceptional."  *United States v. Chen*, 257 F. Supp. 2d 656, 664 (S.D. N.Y. 2003).  Neither the language of the statute nor the legislative history support this assertion.  To the contrary, it is widely accepted that a determination of whether detention is appropriate requires a fact-intensive analysis and should be based on the circumstances of each individual case.  Most courts agree that such fact-intensive, case-by-case determinations are better reserved for a district court familiar with the facts of the case and characteristics of the defendant, rather than by a reviewing court on a "cold record."  Additionally, under the reasoning in *Chen*, it is unclear how the record would be developed for the appellate court's review if the district court does not have the authority to consider exceptional reasons in the first instance.

would be subject to the vagaries of a court of appeals docket"). Even where a circuit court exercises expedited review of a detention order pending sentencing, there would always exist an interval of time that might render moot the "exceptional reasons" necessitating a defendant's release rather than detention.

Furthermore, the minority rule would preclude a district court from considering even the most exigent reasons for release, such as a defendant's cooperation and assistance with the government or serious medical needs. Indeed, if a district court does not have discretionary authority under § 3145(c) to find exceptional reasons for release pending sentencing, then a court could not allow, under appropriate circumstances, a cooperating defendant to remain on bond so that he may continue his cooperation and assistance and avoid potential dangers associated with incarceration.

Such a rule would place an unreasonable burden on the government and an unnecessary risk on the defendant. Other courts have concluded that "the extent and effect of the defendant's cooperation with the Government" is a proper consideration in extraordinary cases. *United States v. Green*, 250 F. Supp. 2d 1145, 1150 (E.D. Mo. 2003) (noting, "cooperation with the government may mitigate in favor of release pending sentencing"); *see also United States v. Mitchell*, 358 F. Supp. 2d 707, 708-09 (E.D. Wis. 2005) (granting release pending sentencing because of the defendant's cooperation with the government); *United States v. Carretero*, No. 98-cr-418-TJM, 1999 WL 1034508 (N.D. N.Y. Nov. 4, 1999) (explaining exceptional circumstances may arise in an appropriate case where the defendant is engaged in "active cooperation which benefits the government"). Of particular concern to this Court, in certain cases, is the risk of subjecting a defendant to

potential retaliation by his co-defendants or other individuals related to the defendant's cooperation and assistance with the government—a scenario that is not unlikely if the defendant is being detained at a local facility pending sentencing.

Likewise, a significant health emergency may constitute an exceptional reason that requires immediate release from detention. A district court should have the authority to consider whether extraordinary health issues would permit a defendant's release from detention so as not to impose "an unusually harsh effect of a personal nature not ordinarily experienced by an individual facing incarceration." *Green*, 250 F. Supp. 2d at 1150; *see also United States v. Varney*, No. 12-crim-09-ART-HAI, 2013 WL 2406256, at *1 (E.D. Ky. May 31, 2013) ("An immediate medical need—such as impending, required surgery—may be an exceptional reason justifying release.") (citing *United States v. Koon*, 6 F.3d 561, 567 (9th Cir. 1993)). It is simply not logical that significant health reasons or other exigencies must be addressed by the circuit court rather than the district court—nor does the language of the statute, in this Court's opinion, require such a result.

Thus, a district court, considering a request for release pending sentencing in the first instance, should have the discretion to consider whether a defendant's cooperation and assistance with the government, a defendant's serious medical condition, or some other similarly exigent circumstance constitutes an exceptional reason to be released.

In sum, this Court agrees with Judge Conner's well-reasoned conclusion:

> Armed with the statutory definition of judicial officer, the plain meaning of the final sentence of § 3145(c) authorizes district courts and appellate courts to grant release upon a finding of exceptional reasons making detention inappropriate. There is nothing illogical about the placement of this authority in a subsection entitled "appeal from a release or detention

order."  To the contrary, it simply reflects the practical necessity of permitting district courts to undertake the threshold analysis of exceptional reasons.

*Williams*, 903 F. Supp. 2d at 299 (citations omitted).

### 2.      Minority View

The majority view is not without criticism, particularly here in the Western District of Pennsylvania.  Judge Diamond's opinion in the Western District case of *United States v. Salome*, 870 F. Supp. 648 (W.D. Pa. 1994), is a leading case explaining the minority view.  That opinion concludes,

> [T]he jurisdiction established by § 3145(c) is appellate jurisdiction, not original jurisdiction to act independently.  Accordingly, as this court issued the defendant's detention order in the first instance, we have no authority pursuant to § 3145(c) to determine whether there are "exceptional reasons" that make defendant's detention inappropriate in this case.

*Salome*, 870 F. Supp. at 652.  Judge Diamond recognized that this holding was contrary to the decisions of several circuit courts, but opined that those "decisions ignore certain fundamental principles of statutory interpretation."  *Id*.

The *Salome* opinion identifies four reasons to support the conclusion that "§ 3145(c) does not apply to a district court when it rules on a release or detention motion in the first instance."  *Id*. at 653.  First, the plain language of the statute demonstrates that it is applicable only on appeal.  Namely, the statutory provision is entitled "[a]ppeal from a release or detention order," and the first two sentences of the subsection address rules governing appeals.  Second, the overall structure of § 3145 shows § 3145(c) does not apply to district courts.  Specifically, §§ 3145(a) and 3145(b) address the issue of a district court's

review of release and detention orders, while § 3145(c) addresses an appeal to the circuit court. Third, there is no evidence from the language of the statute that Congress intended to connect § 3145(c) with the provisions of § 3143. Fourth, circuit courts are permitted and even required to make factual findings on issues arising under the Bail Reform Act, thus dispelling any argument that district courts should engage in the analysis of § 3145(c) in the first instance.

Subsequent to the *Salome* decision, another court in the Western District decided *United States v. Nesser*, 937 F. Supp. 507 (W.D. Pa. 1996), which "adopted the reasoning of *Salome*" and expanded on its analysis. Specifically, *Nesser* focused on the "appeal" language of § 3145(c) and concluded that Congress reserved the task of considering a defendant's "exceptional reasons" argument for bail pending sentencing for the court of appeals. Likewise, several other district courts have adopted and expanded the reasoning of *Salome* and *Nesser*, embracing the minority view. *See, e.g., United States v. Chen*, 257 F. Supp. 2d 656 (S.D. N.Y. 2003); *United States v. Rausch*, 746 F. Supp. 2d 1192, 1195 (D. Colo. 2010); *United States v. Cochran*, 640 F. Supp. 2d 934 (N.D. Ohio 2009); *United States v. Harrison*, 430 F. Supp. 2d 1378 (M.D. Ga. 2006); *In Re Sealed Case*, 242 F. Supp. 2d 489 (E.D. Mich. 2003); *United States v. Bloomer*, 791 F. Supp. 100 (D. Vt. 1992).

Despite the well-articulated reasoning of these decisions, this Court respectfully disagrees with the conclusion that Congress intended that only courts of appeals should apply § 3145(c). In particular, neither *Salome* nor *Nesser* fully addressed the critical language of § 3145(c) that provides a district court with the discretionary authority to consider exceptional circumstances—the language encompassed by the final sentence of

the subsection. Instead, this Court finds that, for the reasons explained in the section above, the minority view improperly interprets the plain language of the statute, and further fails to consider the weight of extensive appellate authority, the legislative history of the statute, and the practical implications of the minority rule.

The Court recognizes both the importance of consistent opinions within this District and the weighty doctrine of *stare decisis*.[10] However, after a careful review of the language of the statute and the development of the case law on this issue over the past two decades, and after deliberating over the precedent in this District as well as the decisional law from other district courts in the Third Circuit, this Court concludes that the holdings in *Salmone* and *Nesser* should not be followed. Instead, the considered reasoning of our sister court in the Middle District case of *United States v. Williams*, as supported by the numerous circuit courts that have addressed the issue, embraces a superior interpretation of § 3145(c). Accordingly, the Court finds that it has discretionary authority under § 3145(c) to determine whether exceptional reasons exist to release Defendant from custody pending sentencing.

---

[10] It is axiomatic that "*stare decisis* in respect to statutory interpretation has 'special force,' for 'Congress remains free to alter what [the courts] have done.'" *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 139 (2008) (quoting *Patterson v. McLean Credit Union*, 491 U.S. 164, 172-173 (1989)). Nevertheless, *stare decisis* "is not as significant" in a case where respected authorities call into question the justifications for a particular statutory interpretation and where the interpretation of a statute is not well-settled law. *Leegin Creative Leather Products, Inc. v. PSKS, Inc.*, 551 U.S. 877, 899-900 (2007). But, as one judge has noted, "The social benefits derived from adherence to the doctrine of *stare decisis* and from the separation of the judicial and legislative powers mandate that a court cast aside its prior interpretation of statutory language only in extraordinary circumstances." *Duffy v. Barnes*, 508 F.2d 205, 222 (3d Cir. 1974) (Adams, J., dissenting). This Court finds such extraordinary circumstances present here. The majority view, held by an overwhelming number of circuit and district courts, counters and undercuts the decisions of this District in *Salome* and *Nesser* such that those decisions should be afforded very little, if any, precedential weight.

## C. Exceptional Reasons

Having concluded that a district court has the discretionary authority to consider whether exceptional reasons exist to release a defendant pending sentencing, the Court must now determine (1) what constitutes "exceptional reasons" under § 3145(c), and (2) whether Defendant has met her burden of showing such reasons under the circumstances of the present case.

### 1. What constitutes exceptional reasons?

As an initial matter, the Court must determine what constitutes "exceptional reasons" under § 3145(c). The statute itself does not define "exceptional reasons," and the Third Circuit has not provided any guidance on the issue. However, other courts have identified some general rules that should guide the Court's application of § 3145(c). *See Green*, 250 F. Supp. 2d at 1148-50 (discussing cases and identifying factors to be considered).

To begin, "exceptional requires something 'out of the ordinary' to distinguish the defendant's case from those of [other defendants] subject to mandatory detention." *Salome*, 870 F. Supp. at 653[11] (citing *United States v. Herrera-Soto*, 961 F.2d 645, 646 (7th Cir. 1992)). Most courts have defined "exceptional" under § 3145(c) as "clearly out of the ordinary, uncommon, or rare." *See, e.g., United States v. Larue*, 478 F.3d 924, 925 (8th Cir. 2007); *Herrera-Soto*, 961 F.2d at 647 (explaining that, for a defendant to show exceptional

---

[11] Interestingly, even though the court in *Salome* concluded that it did not have discretionary authority to apply § 3145(c), it nevertheless conducted an analysis of whether the defendant in that case was able to meet his burden under the statute to show exceptional reasons for release. While this Court disagrees with the holding in *Salome* regarding the applicability of § 3145(c), it finds the discussion in that opinion of what constitutes "exceptional reasons" to be very instructive.

reasons, he must present "a unique combination of circumstances giving rise to situations that are out of the ordinary").  Indeed, "to avoid emasculating the mandatory detention statute[,] 'exceptional reasons review is limited to determining whether remanding the defendant to custody until sentencing would be tantamount to subjecting individuals to unjust detention.'"  *United States v. Thomas*, No. 10-cr-229, 2010 WL 3323805, at *2 (D.N.J. Aug. 20, 2010) (quoting *United States v. Christman*, 712 F. Supp. 2d 651, 655 (E.D. Ky. 2010)).

"The test under § 3145(c) is necessarily a flexible one, and district courts have wide latitude to determine whether a particular set of circumstances qualifies as 'exceptional.'" *United States v. Lea*, 360 F.3d 401, 403 (2d Cir. 2004).  Thus, determining whether the circumstances of a given case constitute "'exceptional reasons' is a fact-intensive inquiry within the discretion of the district court," *United States v. Koon*, 6 F.3d 561 (9th Cir. 1993) (Rymer, J., concurring), and for which "a case by case evaluation is essential."  *United States v. DiSomma*, 951 F.2d 494, 497 (2d Cir. 1991).  The burden is on Defendant to show by clear and convincing evidence why her detention would not be appropriate based on exceptional reasons.  *United States v. Stein*, No. 90-cr-0425-01, 1991 WL 97635, at *3 (E.D. Pa. May 31, 1991).

Finally, in determining what constitutes "exceptional," this Court finds instructive the standard applied by courts in this District to determine whether a defendant qualifies for early termination of supervised release under 18 U.S.C. § 3583(e) in light of the factors under 18 U.S.C. § 3553(a).  *See, e.g., United States v. Moore*, No. 01-cr-145, 2014 WL 1765978, at *5 (W.D. Pa. May 2, 2014) (finding that defendant's conduct while on supervised release

was "commendable"—which included obtaining a certified personal training license; moving away from the people and places that led to his criminal conduct; holding a steady job as a personal trainer for a significant period of time; demonstrating dedication to his wife and children; and complying with his release conditions—but that those circumstances did not rise to the level of "exceptional" to constitute a basis for early termination of his supervision); *but see United States v. Carter*, No. 2:06-cr-00387, 2014 WL 2112723, at *2 n.5 (W.D. Pa. May 20, 2014).

### 2. Whether Defendant has met her burden?

Defendant has identified a number of reasons that she claims are sufficiently exceptional to allow her release pending sentencing: (1) her unblemished performance on pretrial release, (2) her ongoing employment at two stable jobs, (3) her role as a single parent providing for her two children, and (4) her attempt to change her life, including getting her GED. The Court will separately address each reason.

First, Defendant asserts that she has not violated any of the conditions of her bond. Indeed, the probation officer supervising Defendant's pretrial release testified at the detention hearing that Defendant has been compliant with all of the pretrial detention restrictions. Nevertheless, "[i]t is not exceptional to expect every defendant to timely appear in court and to obey the court's order concerning pretrial conditions of release." *United States v. Little*, 485 F.3d 1210, 1211 (8th Cir. 2007); s*ee also United States v. Mahoney*, 627 F.3d 705 (8th Cir. 2010) ("It is well settled that compliance with the terms of pretrial release is commendable but does not justify release under section 3145(c).").

Second, Defendant asserts that she works two jobs, totaling more than 60 hours per week, to provide for her family. She works full time as a helper at Shear Magic, a barber and beauty shop, and she works part time as a bartender at a local Elks Lodge. Defendant's work supervisors from both places of employment testified that Defendant was a hardworking, reliable employee. (*See* ECF No. 47 at 5:9-6:24). However, gainful employment up until the date of sentencing is not, in and of itself, an exceptional reason why Defendant's detention would not be appropriate. *See United States v. Mostrom*, 11 F.3d 93, 95 (8th Cir. 1993); *United States v. Nickell*, 512 F. App'x 660, 661 (8th Cir. 2013) (finding that defendant's taking care of his children and remaining gainfully employed did not constitute exceptional reasons).

Third, Defendant asserts that she is a single mother of two children—a fourteen-year-old son and a sixteen-year-old son—and that she desires to provide for them and to serve as a positive role model for them. Defendant concedes that, if she is detained, she can arrange for a family member to take care of her children, but that they will likely need to relocate to North Carolina. Most courts agree that "purely personal" circumstances do not typically rise to the level of exceptional. *See, e.g.*, *United States v. Lippold*, 175 F. Supp. 2d 537, 540 (S.D. N.Y. 2001); *but see United States v. Kaquatosh*, 252 F. Supp. 2d 775, 778 (E.D. Wis. 2003). Accordingly, while "incarceration regrettably inflicts family hardship on many, if not most, defendants," family hardships will not ordinarily constitute exceptional reasons for release pending sentencing. *United States v. Burnett*, 76 F. Supp. 2d 846, 849 (E.D. Tenn. 1999). Here, Defendant's asserted family hardship—that she wishes to take care of her children and that, if she is incarcerated, her sons will have to relocate to

North Carolina—do not constitute exceptional reasons. Instead, these circumstances constitute ordinary consequences of incarceration. *See United States v. Schimley*, No. 1:08-cr-510, 2010 WL 1796337, at *3 (N.D. Ohio May 3, 2010) (explaining defendant's "desire to be with his family and his anticipated absence from his daughter's wedding are purely personal considerations that do not constitute exceptional reasons justifying release").

Finally, Defendant asserts that she is "actually trying to change her existence by not only working very hard at work, but also in school and trying to make a good example earning a legitimate income." (ECF No. 47 at 4:24-5:1). Significantly, Defendant has been working two stable jobs and recently obtained her GED. But, while the facts that Defendant recently obtained her GED and is employed in two jobs are commendable and demonstrate a desire to turn her life around, they are not exceptional reasons such that she should be released pending sentencing. *See, e.g.*, *United States v. Lea*, 360 F.3d 401, 403-04 (2d Cir. 2004) (concluding there is "nothing 'exceptional' about going to school[ or] being employed").

This Court has previously identified two categories of circumstances that could qualify as exceptional reasons in the context of pretrial release, depending of course on the circumstances of each case: (1) significant medical needs of the defendant, and (2) cooperation of the defendant with the Government. Neither of these two situations is present in this case.

As noted above, it is commendable that, during the nine months since Defendant was indicted, she has obtained her high school diploma equivalent, she has secured two jobs that provide a steady income for her family, and she has complied with her pretrial

release requirements.  However, these actions do not constitute exceptional reasons under § 3145(c) to overcome the mandatory detention provision of § 3143(a)(2).  As the Government noted at the detention hearing, Defendant's compliance with the Court's bond requirements and Defendant's conformance to society's expectations are not exceptional—these behaviors are expected of all defendants.  Moreover, the statute places a high burden on Defendant—she must "clearly" show "exceptional reasons" why her detention would not be appropriate.  Simply stated, Defendant's proffered reasons do not meet the exceptional reasons requirement of § 3145(c).[12]  Defendant pled guilty to serious crimes and is waiting to be sentenced.  The Bail Reform Act imposes a mandatory presumption that such persons should be detained, a presumption which Defendant has failed to rebut with clear and convincing evidence of exceptional reasons.

The Court has carefully reviewed the record in this case, the testimony and evidence from the detention hearing, the arguments of counsel, and the relevant statutory authority and case law.  Defendant, by nature of her plea, is guilty of an offense prohibited by the Controlled Substances Act and which carries a maximum term of imprisonment of twenty years.  Defendant has presented clear and convincing evidence

---

[12] Defendant has failed to adequately identify any reasons that comport with the factors that courts have found to constitute exceptional reasons.  *See, e.g.*, *United States v. Green*, 250 F. Supp. 2d 1145, 1150 (E.D. Mo. 2003), identifying the following factors:

    (1) whether detention imposes an unusually harsh effect of a personal nature not ordinarily experienced by an individual facing incarceration,

    (2) whether the defendant is incapacitated from or extremely unlikely to engage in recidivist behavior while released,

    (3) whether additional incarceration would result in an unjust extended period of detention because the defendant's uniquely low culpability is likely to reduce the sentence or a novel legal question for appeal exists, and

    (4) the extent and effect of the defendant's cooperation with the Government.

that she is not likely to flee and is not a danger to the community. However, Defendant has failed to clearly establish exceptional reasons to qualify her for release under § 3145(c). Accordingly, Defendant must be detained pursuant to § 3143(a)(2).

## IV.     Conclusion

For the reasons stated above, the Court finds that Defendant has failed to show, pursuant to 18 U.S.C. § 3145(c), the existence of any exceptional reasons why her detention would not be appropriate. Defendant's bond will be revoked, and Defendant shall be detained pursuant to the mandatory detention provisions of 18 U.S.C. § 3143(a)(2) pending sentencing by this Court.

An appropriate order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | )    **CRIMINAL NO. 3:13-35** |
| **v.** | ) |
| | )    **JUDGE KIM R. GIBSON** |
| **RUKIYA R. SMITH,** | ) |
| | ) |
| **Defendant.** | ) |

### ORDER

**AND NOW**, this 22nd day of July 2014, upon consideration of Defendant Rukiya R. Smith's request to remain on bond pending sentencing, **IT IS HEREBY ORDERED** that her request is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's bond is revoked and Defendant shall be detained pending sentencing. Defendant shall voluntarily surrender herself by 12:00 p.m. (noon), on July 23, 2014, to the United States Marshals Service at the Penn Traffic Building, 319 Washington Street, Johnstown, PA 15901. If Defendant fails to surrender herself, the United States Marshals are directed to take Defendant into custody.

**BY THE COURT:**

**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**